**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 24-mj-00037** |
| **v.** | |
| **JUNIOUS PLUMMER,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Junious Plummer be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence) and 18 U.S.C. § 3142(f)(1)(E) (offense involving the use of a firearm). Mr. Plummer carjacked three different members of our community at gunpoint over the course of five months. He did not just threaten these individuals, he struck two of them in the face with guns before stealing their vehicles and other possessions. After he was charged with these offenses, law enforcement could not locate him as he does not maintain a stable address or phone number. Further, despite being made aware of the warrant for his arrest, he failed to turn himself in. In light of the presumption applicable to these offenses, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Mr. Plummer should be detained pending trial.

## BACKGROUND

### *The Charged Offenses*

Mr. Plummer is charged in connection with three different armed carjackings on August

11, October 18, and December 18, 2023.

***The August 11, 2023 Armed Carjacking***

On August 11, 2023, at approximately 7:48 am, the Metropolitan Police Department (MPD) responded to 3915 Dix Street NE, Washington, D.C. for a reported carjacking. The victim of the carjacking (Victim-1) reported to MPD that Victim-1 had parked Victim-1's vehicle, a blue 2005 Hyundai Elantra, in a parking lot on the east side of 3905 Dix Street Northeast. Victim-1 slept in the driver's seat of the Hyundai overnight and Victim-2 slept in the front passenger's seat. At approximately 7:30 a.m., Victim-1 observed a suspect opening the driver's door. The suspect demanded that Victim-1 exit the vehicle. Victim-1 tried to close the door, but in response, the suspect struck Victim-1 in the head with a black handgun. Victim-1 exited the vehicle, and the Suspect sat in the driver's seat. The Suspect then ordered Victim-2 to exit the vehicle and Victim-2 complied. The Suspect then fled in Victim-1's Hyundai, towards Minnesota Avenue NE. Victim-1's cell phone was inside the vehicle at the time of the offense and remained in the vehicle when the Suspect fled. Victim-1 described the phone as a black Samsung with a white Tracfone sticker on the back.

Victim-1 described the Suspect as a black male, with brown complexion, approximately 6'0" tall with long dreadlocks and wearing a black long-sleeved top.

MPD also spoke to Victim-2. Victim-2 reported that Victim-1 parked his vehicle in the parking lot next to the Therapeutic Services building and the two fell asleep in the vehicle. When Victim-2 woke up, Victim-2 saw Victim-1 exiting the vehicle and the Suspect entering the driver's seat. Victim-2 stated that the Suspect stated something to the effect of "you might get your car back later' to Victim-1 and observed the Suspect holding a small handgun at his

waist.   Victim-2 did not see the Suspect point the firearm or strike Victim-1 with the firearm. Victim-2 gathered his belongings (a phone, backpack, and canes) and exited the vehicle. Victim-2 described the Suspect as a black male in his thirties, medium complexion, slim build, approximately 5'9", wearing a face mask and armed with a handgun.

MPD obtained surveillance footage reflecting the offense.

At approximately 7:10 a.m., the Suspect is in the alley behind 3905 Dix Street Northeast with an unidentified individual.   The Suspect walks westbound in the alley and out of view of the camera.   The Suspect is wearing a black ski mask that is pulled down to show his face.   The Suspect appears to be a Black male with long black dreads and facial hair wearing a black shirt with the text "I'm not rude" printed on the shirt in white lettering, black pants, dark-colored shoes, and carrying a yellow backpack.   *See Figure 1.*

*Figure 1*



At approximately 7:26 a.m., the Suspect walks behind Victim-1's vehicle towards Dix Street Northeast.   He looks both ways on Dix Street before turning around and walking by

3

Victim-1's vehicle towards the alley.   At approximately 7:27 a.m., the Suspect, whose ski mask now covers his face, again walks towards Dix Street and looks around.

At approximately 7:28 a.m., the Suspect approaches the driver's side of Victim-1's vehicle while clutching the outside of his waistband.

*Figure 2*



After several seconds, the Suspect opens the driver's door with his left hand and leans into the vehicle. As he briefly leans outside the vehicle, a black handgun can be seen in his right hand.

*Figure 3*

4



The Suspect then leans back into the vehicle, and Victim-1 exits the car seconds later. The Suspect enters the driver's seat, and Victim-1 walks around to the passenger's side, opens the passenger's door, and Victim-2 exits the car.   At approximately 7:31 a.m., the Suspect drives away in Victim-1's vehicle.

Approximately seventeen hours later, on August 11, 2023, at approximately 10:20 p.m., MPD officers were patrolling in the Seventh District when they observed a blue Hyundai sedan parked in the rear of 2723 Jasper Street SE, which they identified as the carjacked vehicle.   The vehicle was processed by the D.C. Department of Forensic Sciences, and a yellow backpack was located on the rear passenger floorboard.   MPD sent a picture of this bag to Victim-1, and Victim-1 reported the bag did not belong to Victim-1.   Instead, based on surveillance video recovered from 3900 Dix Street NE, the yellow backpack recovered from the vehicle is consistent in appearance with the backpack carried by the Suspect during the carjacking.   Inside the yellow

backpack were multiple cellphones, including a black Samsung Tracfone with a white sticker on it consistent with the Victim-1's phone. MPD sent Victim-1 a picture of the phone, and Victim-1 reported that it looked like his phone, however the phone number was deactivated, and Victim-1 did not know any serial numbers associated with the phone to confirm it was his.

At approximately 10:31 p.m. while on scene recovering the vehicle, officers were approached by a black male with long dreads and facial hair wearing a white shirt with black lettering on the front and light blue jeans. *See Figure 4.*

<u>*Figure 4*</u>



The individual advised officers that his bookbag was in the car, and it had been in the vehicle for approximately 30 minutes or an hour.   When officers asked the individual if he knew

6

to whom the vehicle belonged, the man responded, "I know him, but I don't know him.   I just know they call him Jason."   The man then corrected himself and stated "Jake," and in response to the officer's questions provided a description of "Jake."   The man then asked: "is this car stolen or something?"   An officer indicated that it was and then asked the individual for his name.   The individual reported that his name was "Grant."   The man then stated that his property including his phones were in his backpack.   The officer explained that the man could not get his property right away but could retrieve it from the 7th District after officers were done processing the car.   The officer again asked for the man's information so that he could retrieve the property afterwards.   After discussing the process for obtaining his property, the man offered to write his name on a piece of paper.   The man then wrote down his name, date of birth and address as reflected in *Figure 5.*

*Figure 5*



As reflected in *Figure 5*, the man provided his name as "Junious Plummer," with a DOB of 6/9/1988.

MPD officers recovered surveillance footage from the intersection of 28th Street and Jasper Street SE.

- On August 11, 2023 at 19:52:09 hours, Victim-1's vehicle is observed traveling eastbound in the 2700 block of Jasper Street Southeast. The sunroof is open and the front passenger's window appears to be down. The driver appears to be wearing a white shirt, and there is a yellow item in the front seat. The vehicle turns right and travels southbound in the 3200 block of 28th Street Southeast.

- 19:52:17: Victim-1's vehicle turns right into an alley in the rear of 2723/2727 Jasper Street Southeast and out of view of the camera.

- 22:23:10: A marked police cruiser enters the alley behind 2723 Jasper Street Southeast from where officers recovered the Victim-1's vehicle.

- 22:24:38: Two individuals walk out of the alley behind 2727 Jasper Street Southeast and travel northbound on 28th Street Southeast. One individual is observed wearing dark

8

clothing, and the second individual is observed to be a Black male with long dreads wearing a white t-shirt with a black design on the chest, light blue jeans (consistent with the physical appearance and clothing of Junious Plummer when he makes contact with the officers seven minutes later). Both individuals walk westbound on Jasper Street Southeast and out of view of the camera.

Law enforcement conducted searches of law enforcement databases based on the name "Junious Plummer." Law enforcement identified an individual named Junious Plummer with a DOB of 6/9/1988, and PDID 578-614. As reflected in *Figure 6*, Law enforcement databases contained a recent photograph of Plummer from an October 30, 2023 arrest.

*Figure 6*



The October 30, 2023, photograph of Plummer was based on an arrest for Plummer's unlawful possession of a firearm. Specifically, Plummer was found to be in possession of a black Charter Arms .357 revolver loaded with five rounds of ammunition, which is reflected in *Figure 7*.[1]

*Figure 7*

---

[1] This offense was not pursued in D.C. Superior Court but will likely be charged in this case.

9



A comparison of Plummer's October 30, 2023 photograph (*Figure 6*), with surveillance video from the carjacking of a man carrying a yellow backpack and carjacking the blue Hyundai (*Figure* 1) and body-worn camera (*Figure* 4) of the man who identified himself as Junious Plummer, and identified himself as leaving a yellow backpack in the stolen vehicle that contained a phone consistent with Victim-1 less than 24 hours after the carjacking, reflects that the individual appears to be the same man.

### *October 18, 2023 Carjacking*

On October 18, 2023, Victim-3 approached an MPD officer and reported that he had been carjacked while at a nearby gas station.   Victim-3 described the Suspect as an African American male, light skin-complexion, slim build, dreadlocks, wearing blue jeans and a backpack.   Victim-3 explained that he stopped at the Exxon Gas Station located at 4100 Hunt Place NE, Washington, D.C. Victim-3's vehicle was facing the gas station, in the direction of Nannie Helen Burroughs Avenue Northeast, Washington, D.C. Victim-3 advised that as he finished pumping gas and was about to re-enter his vehicle, the Suspect walked up from the front of his vehicle and brandished a silver revolver.   The Suspect stated: "gimme your keys." Victim-3 said that he hesitated, and, in response, the Suspect struck him once on the side of his head with the firearm.   Victim-3 dropped his vehicle keys and cellphone.   The Suspect picked up the keys and phone from the ground and

got into Victim-3's vehicle and drove across Hunt Place Northeast into the adjacent alley, behind the 4100 block of Minnesota Avenue Northeast.   Victim-3 advised that he briefly ran after his vehicle but then walked in a southbound direction on Minnesota Avenue NE until he saw a police officer, in the Bank of America parking lot.

In addition to the vehicle, the Suspect stole Victim-3's blue Apple iPhone 14, a pair of Apple AirPods, and keys.   Victim-3 described the Suspect as an African American man, approximately in his thirties, approximately 6'0 in height, thin build, long dreadlocks, slight facial hair, brown-skinned, wearing blue jeans, and armed with a silver revolver.

MPD recovered surveillance footage from the Exxon Mobile Gas Station located at 4100 Hunt Place NE, Washington, D.C.   That surveillance video reflected two individuals sitting on a retaining wall adjacent to an alley in the 4100 block of Hunt Place NE.   The individuals on the retaining wall are circled in red in *Figure 8*.

## *Figure 8*



Victim-3's vehicle (circled in red in *Figure 9*) travelled from Minnesota Avenue NE.



*Figure 9*



Victim-3 exited the driver's seat of his vehicle and walked toward the gas station.

*Figure 10*



The footage next captured Victim-3 walk back and refuel his vehicle.

*Figure 11*



As Victim-3 refueled his vehicle, one of the two individuals (the Suspect), stands up and starts walking towards the gas station. The second individual stayed sitting on the retaining wall.

*Figure 12*



As the Suspect walked into the camera view his dreadlocks, which appeared very long, were captured swinging.   The suspect was wearing light color pants, a blue jacket, dark color shoes, a backpack, and he was wearing some black article of clothing on his head.   As the Suspect walked through the gas station parking lot, he was captured looking over at Victim-3 as he refueled his vehicle.   The Suspect then walked in front of Victim-3's vehicle and appeared to be reaching into his waistband.   The Suspect can be seen pulling something from his waistband and quickly walking over to Victim-3.

*Figures 13 and 14*

15



The Suspect walked around the opened driver's door of Victim-3's vehicle and Victim-3 jumps backwards.   The Suspect then moved towards Victim-3 and is captured striking Victim-3 across the head.   The Suspect then bends down and appears to pick something up off the ground.

*Figures 15 and 16*



16



Victim-3 is then captured backing away from S-1, as S-1 entered the driver's seat of Victim-3's vehicle.   S-1 then flees in Victim-3's vehicle onto the 4100 block of Hunt Place NE, Washington, D.C. and into the alley behind the 4100 block of Minnesota Avenue NE.   Victim-3 is seen running towards his stolen vehicle.

*Figures 17, 18, and 19*







During the course of their investigation, MPD became aware of the August 11, 2023 carjacking incident described above.   MPD reviewed the photographs depicted above in *Figures 1* and *4*, and determined that the suspect in the August carjacking was similar in appearance and stole the vehicle in a similar manner, specifically approaching and then hitting the victim in the head with a firearm.

On January 6, 2024, MPD contacted Victim-3 and asked if he could identify the Suspect. Victim-3 responded that the Suspect was "at least 30 years old or older, light skin/brown skin, long thick braids or dreads, I remember he had a small backpack, silver rusty revolver, all I remember." On January 10, 2024, MPD conducted a photo array with Victim-3.   Specifically, Victim-3 was provided with 8 photographs of individuals similar in appearance to JUNIOUS PLUMMER, along with 1 photograph of PLUMMER (9 photographs in total).   Victim-3 identified the October 30, 2023 photograph (*Figure 6*) of PLUMMER as the Suspect.

Additionally, MPD showed Victim-3 a photograph of the firearm that Junious Plummer was arrested with on October 30, 2023 to see if Victim-3 recognized the firearm.   Victim-3 advised that he believed that the firearm is possibly the same as the one used by S-1 during the Carjacking.   Victim-3 advised that the firearm he remembered was an older looking revolver. Victim-3 noted that he did not see the handle of the firearm during the carjacking.

*Figure 20*



### The December 18, 2023 Armed Carjacking

On December 18, 2023, MPD responded to 4020 Minnesota Avenue Northeast Washington, D.C. at the Park Seven Apartments for a reported armed carjacking.   Officers spoke with Victim-4, who reported that two black males, one armed with a machinegun-style firearm, approached her and took her vehicle, a 2014 black Chrysler 300 bearing Maryland tag 2GA0726. Victim-4 advised that the individuals had also taken her purple iPhone 14 Pro Max, a brown Michael Kors wallet, and a purse.   She reported that around 6:55 AM, she had exited the building and was walking towards her vehicle, which was parked on the south side of the building.   Victim-4 advised that she saw Suspect-1 and Suspect-2 walking ahead of her in the parking lot.   She believed they were acting suspiciously, but she advised that due to where she lived, she brushed it off.   Victim-4 advised that she started her vehicle and went to the trunk of the car.   Once at the

truck of the car, Suspect-1 pointed a machine-style gun, with a drum attached, at her.   Suspect-1 stated something to the effect of "give me your keys, give me your keys" and started forcing Victim-4 to the ground.   Victim-4 advised that she put her hands up, and Suspect-1 stuck the gun in her side and to her head and asked for the keys again.   Victim-4 advised that she told Suspect-1 that the keys were in the vehicle.   At this point, Suspect-2 approached and jumped into the driver's seat of the vehicle, and Suspect-1 got into the passenger seat of the vehicle and fled the location towards Minnesota Avenue NE.

Shortly after the offense, Victim-4 reviewed her bank account information and noticed that someone had used her debit card at 7:22 AM at a Sunoco gas stations in Upper Marlboro, Maryland.   MPD conducted a query and determined that there are two Sunocos in Upper Marlboro: Store No. 0436645604, 1020 Largo Center Drive, Upper Marlboro, MD 20774, and Store No. 0432495000, 4109 Crain Hwy, Upper Marlboro, MD 20772.   There were two transactions at Sunoco.   One for $13.15 and another for $47.53.   Shortly after, at 8:00 AM, Victim-4's debit card was used at Target, located at 4600 Mitchellville Road, Bowie, Maryland. The Target transaction was for $529.99.   At 8:31 AM, the debit card was again used at Walmart, located at 3300 Crain Highway, Bowie, MD 20716.   The Walmart transaction was for $105.75.

Victim-4 described the suspects to police.   She described Suspect-1 as a black male dark complexion, slim build, 5'7-5'9", wearing all black.   Victim-4 described Suspect-2 as a black male medium complexion, 6'-6'3", wearing all-black clothing.

MPD recovered surveillance footage from Minnesota Avenue and Dix Street NE.   The footage contained time stamps accurately reflecting the time.

At 06:41:52 AM, two black men walk north on Minnesota Avenue Northeast together.

21

The first man is wearing all dark clothing including a dark colored jacket with fur on the hood. The second man is wearing all dark clothing and carrying a red book bag over his shoulders.   Both men walk northbound on Minnesota Avenue NE toward the offense location out of camera view.

On December 20, 2023 Detective Rimel received video footage from the Target located at 4600 Mitchellville Road Bowie, Maryland.

Video from the electronics section, where Victim-4's card was used, reflects the following:

- 7:53:25:   Suspect-2 in all black clothing, and a black ski mask walks into camera view and walks past the sale counter.   Suspect-2 walks down the aisle away from the camera and out of camera view;
- 7:53:54:   Suspect-1 in all dark pants, dark hoodie with white writing, and a dark jacket with fur on the hood enters the camera view.   Suspect-1 walks along the sale counter into the electronics section.   Suspect-1 then stands in front of the sale counter and pulls an item from his pocket and looks down at it.   Suspect-1 stands at the sale counter for the remainder of the video;
- 7:55:57: Suspect-2 re-appears from the aisle into camera view and walks toward Suspect-1. Suspect-2 walks past Suspect-1 and enters the electronics section Suspect-2 walks back and forth through the aisles as if he is looking at the electronics inventory.   Suspect-2 then exits camera view, at the bottom left of the screen.
- 7:59:38 An employee wearing a red shirt approaches the counter carrying a box.   Suspect-1 enters a credit card into the credit card reader.   Suspect-1 then pulls the credit card from the reader and appears to place it back into his pocket.   At 8:01:47, Suspect-1 walks away from the counter and out of camera view.

Video from the store's exit reflects the following:

- 8:03:06:   Suspect-1 exits the store.   Suspect-1 is wearing dark pants a brown belt a black hoodie with a light or white colored graphic on the front and a black or dark grey coat with fur around the hood.   Suspect-1 has glasses on and a ski mask. *See Figure 21.*

*Figure 21*



- 8:03:19:   Suspect-2 exits the store wearing black pants with thigh high zipper pockets, a black button up style coat and a ski mask.   Suspect-2 is also wearing green or blue tinted glasses. Suspect-2 appears to be slightly taller than Suspect-1.   See Figure 22.

*Figure 22*



Video from the parking lot reflects the following:

23

- 8:03:22:  Suspect-1 is observed walking away from the store wearing the jacket with fur on the hood.  Suspect-2 is then observed walking to the left of Suspect-1.  Suspect-1 walks to then tenth car away from the store in the fourth row of cars and disappears out of camera view.  Suspect-2 walks to the same vehicle but on the passenger side and disappears from camera view.
- 8:07:52:  A black Chrysler 300 exits the parking space where Suspect-1 and Suspect-2 were seen walking toward.  The Chrysler 300 turns away from the store and drives away, the vehicle makes a left turn toward the end of the parking lot out of camera view.  See Figure 24.

*Figure 23*



Law enforcement also obtained surveillance video from the Wal-Mart in Bowie, Maryland where Victim-4's debit card was also used.

Surveillance footage from the store entrance reflects that at 8:16:30 a.m., Suspect-2 walks into the store followed by Suspect-1.   Suspect-1 is wearing black sneakers, black pants, brown belt, black sweatshirt with white graphics and a black jacket with fur on the hood, with a satchel draped across his chest.  *See Figure 25* below.   Suspect-2 is wearing black boots, black pants with zippers on the sides, a black coat with a hood, Suspect-2 appears to have a mustache.  *See Figures 25* and *26* below.   It appears based on the entrance theft detection device that Suspect-2 is slightly taller than Suspect-1.

*Figures 25 and 26*

24





Surveillance footage from near the self-checkout registers reflects that at 8:41:02 a.m., both suspects walk in front of the self-checkout registers and walk out the store.

After reviewing the video footage from both Walmart and Target, it appears that the individuals who enter the Target are the same two individuals who enter the Walmart.   In each of

25

the video clips there is a male in a dark colored jacket with fur on the hood observed with a second male in all dark clothing.   In the videos from both stores, Suspect-1 appeared slightly shorter than Suspect-2.   Victim-4 stated that Suspect-2 was taller than Suspect-1 and that Suspect-2 was wearing work boots.

Moreover, all of the locations at which Victim-4's card was used are driveable within the amount of time that expired by the time of each purchase.   Specifically, the carjacking occurred at 6:55 AM at 4020 Minnesota Avenue NE.   The transaction at Sunoco occurred twenty-seven minutes later at 7:22 AM.   One of the Sunoco's is located 7.7 miles away from 4020 Minnesota Avenue and would take approximately twenty-three minutes to reach traveling at normal speeds. The other Sunoco is located 22.7 miles away from 4020 Minnesota Avenue and would take approximately twenty-eight minutes to reach traveling at normal speeds.   Victim-4's card was used thirty-eight minutes later at the Target.   The Target is located 10 miles (or eighteen minutes) from one Sunoco and 13 miles (eighteen to twenty minutes) from the other.   Thirty-one minutes later, Victim-4's card was used at the Walmart.   The Walmart is 1.5 miles (six minutes) from the Target.

Surveillance footage was also recovered from 4020 Minnesota Avenue NE, the parking lot where the offense occurred.   The surveillance footage reflects that at 06:55:34 Suspect-2, followed by Suspect-1 enter the rear parking area through the vehicle gate. *See Figure* 27. Suspect-2 is wearing all black clothing with a red or orange book bag.   Suspect-1 is wearing black pants and a dark colored jacket with fur on the hood.   At 07:01:16 a black Chrysler 300 is observed exiting the parking lot. *See Figure* 28.

*Figure 27*



*Figure 28*



The individuals in this footage are consistent in appearance and dress with the individuals depicted in the Target and Walmart surveillance footage.

MPD created and circulated a Be On the Lookout (BOLO) poster for the unmasked individual (Suspect-2) and released it to the public.

*Figure 29*

27



An anonymous caller identified Suspect-2 as "Craig Marbury."   MPD reviewed law enforcement databases and identified a "Robert Craig Marbury."   MPD responded to that individual's home and met with his family members.   Those family members provided a recent photograph of Mr. Marbury who did not appear to be the same individual as Suspect-1 or Suspect-2.

MPD conducted public records searches for Junious Plummer and identified several potential family members.   MPD responded to one of their listed addresses and met with a family member of Junious Plummer.   MPD stated that they were investigating a crime in Washington, D.C. and asked the family member to look at the BOLO featuring the surveillance footage of Subject-2 as depicted in *Figure* 29.   Mr. Plummer's family member identified Subject-2 as Junious Plummer, first in the surveillance footage photograph and then in the October 2023 booking photo (*Figure 6*).

Each of the carjacked vehicles, the firearms, and any ammunition referenced above were

manufactured outside of Washington, D.C.   Therefore, each vehicle, firearm, and the ammunition involved in these offenses was transported, shipped, or received in interstate or foreign commerce.

### *Mr. Plummer's Arrest*

On January 30, 2024, Mr. Plummer was charged by Complaint with three violations of 18 U.S.C. § 2119 for the armed carjackings described above, and a warrant was issued for his arrest. Mr. Plummer does not maintain a stable address.   Nor was law enforcement able to find a telephone number or even social media associated with Mr. Plummer to otherwise identify his whereabouts.   On seven different occasions, for several hours at a time, law enforcement conducted surveillance of locations where Mr. Plummer was known to frequent.   He was not observed on any of those locations.   Law enforcement contacted Mr. Plummer's family and advised them of the warrant for his arrest.   His family indicated that they did not know where he was and did not have the means of contacting him.   Notably, following his arrest, Mr. Plummer indicated to law enforcement that his family had informed him of the warrant.   Despite this, Mr. Plummer did not turn himself in.   Following these efforts, law enforcement took the unusual step of unsealing this case so that the warrant could be publicly circulated across social and traditional media in the hopes of locating Mr. Plummer.

On April 2, 2024, a CVS employee reported a theft.   Specifically, she reported that a man had walked around the store filling up a tote bag with items before leaving without paying. MPD responded and reviewed surveillance video of the incident, noting the suspect's appearance, including a distinctive orange jacket, black face mask, and white tote bag.   As officers left the CVS, they observed Mr. Plummer walking by wearing an orange jacket, black face mask, and white tote bag.   Mr. Plummer identified himself by name, and inside the white

tote bag officers recovered multiple ice cream sandwiches.   Officers then discovered Mr.
Plummer's open federal warrant and placed him under arrest.

### *Mr. Plummer's Criminal History*

Mr. Plummer has been arrested seven times and has one adult conviction.   On April 16,
2013, he was convicted of Conspiracy to Commit Robbery in Montgomery County, Maryland and
sentenced to a suspended sentence of more than 5 years.   He successfully completed supervised
probation on April 16, 2015.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of
conditions will reasonably assure the appearance of [a defendant] as required and the safety of any
other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C.
§ 3142(e).   The Act provides, however, for certain crimes, that there is a rebuttable presumption
that no conditions or combinations of conditions will assure the safety of the community.   *See id.*

The crimes triggering such rebuttable presumptions need not be expressly included in the
charging instrument.   *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding
that "the complaint need not allege a violation of one of the particular predicate offenses for the
presumption to come into play.")   Instead, "[if] the facts establish probable cause that the
defendant has [committed such an offense], the judicial officer should give proper weight to
Congress's general factual view that the defendant poses an unreasonable risk of danger to the
community when applying the § 3142(g) factors."   *Id.*

In determining whether any condition or combinations of conditions will assure the safety
of the community, in light of any applicable presumptions, the Court weighs four factors:   (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

One rebuttable presumption applies here.   Specifically, there is probable cause to believe that Mr. Plummer committed multiple violations of 18 U.S.C. § 924(c) (use of a firearm during a crime of violence). *See* 18 U.S.C. § 3142(e)(3)(B).   A review of the 3142(g) factors only confirms the presumption that Mr. Plummer should be detained pending trial.

## I.   <u>The Nature and Circumstances of this Offense Merits Detention.</u>

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention.

Mr. Plummer is charged in relation to three separate dangerous offenses, each carrying significant penalties.   For each carjacking, Mr. Plummer faces a maximum of fifteen years'

imprisonment.    For his use of a firearm during each carjacking, Mr. Plummer faces a maximum

of life imprisonment, with a mandatory minimum sentence of at least seven years.    Each of those

seven-year sentences would run consecutively to each other and to any sentence that Mr. Plummer

received.    In sum, were he to be convicted, Mr. Plummer is facing a mandatory minimum of at

least twenty-one years imprisonment, but likely more.

The significant penalties Mr. Plummer is facing reflect the serious and deadly nature of

armed carjackings.    Carjackings are particularly dangerous offenses.

As this Court has noted with respect to armed robberies, "[t]he best outcome, if everything

goes as planned during an armed robbery, involves a victim's being placed at risk and feeling

terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple

people—could be killed or seriously injured." *United States v. Lee*, 195 F.Supp.3d 120, 129

(D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in the

case of a single armed robbery).    But the dangerousness is multiplied when the targeted victim is

in or near a mobile conveyance like a vehicle.    If a carjacking victim makes the panicked decision

to try to flee in their vehicle, they could strike and harm others or themselves.[2]    In some cases,

the victim becomes tangled or caught by the vehicle in the course of the carjacking, leading to

injuries or death.[3]    While Mr. Plummer's victims made the choice not to try to run or use their

---

[2] *See, e.g.*, Cory Smith, *Teen Sentenced to Juvenile Detention for DC Carjacking That Killed Uber Eats Driver*, NBC Washington, https://www.nbcwashington.com/news/local/teen-sentenced-to-juvenile-detention-for-dc-carjacking-that-killed-uber-eats-driver/2721236/ (noting that the victim died when he tried to flee in the targeted vehicle).

[3] *See, e.g.*, Chris Welty, *3 teens plead guilty in brutal carjacking that severed woman's arm, killed her*, WVUE/Gray News, https://www.kktv.com/2023/11/21/3-teens-plead-guilty-brutal-carjacking-that-severed-womans-arm-killed-her/;

vehicles, if they had, in a panicked decision, Mr. Plummer's actions could have led to significantly more harm.

The significant penalties Mr. Plummer faces are also reflective of his violent and repetitive conduct during these offenses.   Mr. Plummer repeatedly carjacked and robbed members of our community at gunpoint over the course of five months.   On August 11, 2023, Mr. Plummer preyed on two men sleeping in a vehicle.   He took advantage of them, waking them up, while brandishing a firearm.   He did not just threaten them with a gun, he struck one of the victims across the head with it, before stealing the vehicle and a cellphone.   But this was not a one-off for Mr. Plummer.   Two months later, on October 18, 2023, he sat across from a gas station, waiting for his next target.   While that victim was pumping gas, Mr. Plummer approached him and pointed a gun at him.   Once again, Mr. Plummer did not just threaten, he acted, striking this new victim across the head with a gun.   Mr. Plummer then stole the targeted vehicle along with an iPhone, Airpods, and keys.   Two months later, on December 18, 2023, Mr. Plummer and an associate waited for a new victim, staking her out in the parking garage of an apartment building. As this victim was on her way to work, Mr. Plummer and another man approached her, putting a gun to her side and to her head.   Mr. Plummer and his associate stole the vehicle, which contained the victim's purse.   Mr. Plummer was not content just to steal this woman's vehicle, he decided to also steal her money, proceeding to use her payment cards to hundreds of dollars at multiple different stores.   Mr. Plummer violated this woman's sense of safety and security in her own home and vehicle, and then violated any remaining sense of privacy by using her payment cards.

The nature and circumstances of this offense weighs heavily in favor of detention.

## II.     **The Weight of the Evidence Against the Mr. Plummer is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[4]   The Government's case against Mr. Plummer is very strong.

As an initial matter, Mr. Plummer is fairly distinctive looking.   He is tall, slender, with a thick beard, mustache, and long hair.   This has made it particularly easy for law enforcement and witnesses to identify him using the high-quality surveillance video recovered in many of these offenses.

With respect to the August offense, hours after the offense, officers found the carjacked vehicle with Mr. Plummer standing nearby.   Mr. Plummer indicated that the bookbag in the car— a bookbag consistent with that worn by the carjacker—belonged to him.   He then provided his name and date of birth to law enforcement.   His statements were corroborated by surveillance video reflecting that he had driven the carjacked vehicle and parked it in the area.   And based on surveillance video, Mr. Plummer appears to be the individual who committed the August carjacking.

---

[4]  While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.



With respect to the October offense, the victim in that case identified Mr. Plummer out of a nine-person photo array.   He did not just identify Mr. Plummer, however, he also indicated that the firearm the suspect used was consistent with a firearm recovered from Mr. Plummer's person just twelve days after the carjacking.

With respect to the December offense, Mr. Plummer's family identified him as the man using the victim's payment cards starting just over an hour after the carjacking in a location a considerable distance from where the carjacking occurred.   Mr. Plummer matches the description of one of the suspects as provided by the victim, and the high-quality surveillance video recovered from Target and Walmart indicates that it is, in fact, Mr. Plummer.



Additionally, the similarity between these offenses and Mr. Plummer's consistent actions during each offense corroborates his role in these offenses.   And all of this is without yet having the opportunity to compare Mr. Plummer's DNA to the recovered vehicles and other evidence.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."   *Blackson*, 2023 WL 1778194, at *10.   This is such a case, and the defendant should be detained pending trial.

**III.    The Defendant's History and Characteristics Merit Detention.**

The third factor, Mr. Plummer's history and characteristics, likewise weighs in favor of detention.

While Mr. Plummer has only one adult conviction, it is for a serious offense consistent with the charged offenses, specifically Conspiracy to Commit Robbery.   To his credit, Mr.

Plummer appears to have successfully completed probation in that case.   But law enforcement's inability to locate Mr. Plummer for months, raises significant concerns about the ability of the Court to supervise Mr. Plummer were he to be released.

Mr. Plummer does not maintain a stable address or telephone number.   His family members do not know how to reach him or where to find him.   Despite being made aware of a warrant for his arrest, Mr. Plummer did not turn himself in.   This is not the behavior of someone who is amenable to Court supervision.

Therefore, the third factor, the history and characteristics of the person, weighs in favor of detention.

## IV.    **Mr. Plummer Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by Mr. Plummer's release, similarly weighs in favor of detention.

Mr. Plummer engaged in repetitive and violent conduct, threatening members of our community to steal their vehicles and possessions and striking them when they did not initially relent.   He has indicated the ready ability to find firearms and has no compunction about brandishing and using them.   He has the ability to evade law enforcement for a significant length of time.

It is particularly chilling that these three offenses were not part of some one-day spree. Between each of these offenses, Mr. Plummer had the opportunity to reflect on what he had done. He had the opportunity to think about the individual he had harmed or threatened, and the life-long trauma he inflicted upon them.    And after each of the August and October offenses, he chose to engage in another armed attack on a member of our community.

Moreover, Mr. Plummer's conduct is part of a worrying growth of carjacking in our community.   Last year there were 959 carjackings in D.C.   *See* Cuneyt Dil, *Carjackings in D.C. nearly doubled in 2023*, Axios   (https://www.axios.com/local/washington-dc/2024/01/04/carjacking-rings-arrests-2023).   Five years ago, in 2018, there were only 148 carjackings.   That's an increase of 548%.

Mr. Plummer is not a particularly young man.   He does not have the excuse of youthfulness or inexperience.   He chose on multiple different occasions to terrorize members of our community while armed with and using a firearm.   He represents a danger to our community and should be detained pending trial.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Plummer pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:        */s/ Cameron A. Tepfer*
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
Katherine M. Toth
Ohio Bar No. 100082
Special Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov